UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN POSTAL WORKERS UNION,

Plaintiff,                                    Case No. 09-10856

v.                                    Honorable Nancy G. Edmunds

UNITED STATES POSTAL SERVICE,

Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [7]**

Plaintiff American Postal Workers Union, Detroit District Areal Local, AFL-CIO

("Plaintiff" or "the Union") filed this action for enforcement of an arbitration award

("Cannavo Award").  The Cannavo Award sustained a grievance filed by Plaintiff against

Defendant United States Postal Service ("Defendant" or "Postal Service").  Plaintiff also

seeks a preliminary injunction until class action grievances have been arbitrated.

Defendant asserts that Plaintiff has not satisfied the criteria for an injunction, and this

Court should not enforce the Cannavo Award because enforcement in this case would

be an improper prospective application of the prior arbitration award.  This matter

comes before the Court on Defendant's motion to dismiss.  For the reasons set forth

below, Defendant's motion is GRANTED.

I.      **Facts**

Plaintiff is a labor organization that represents more than 5,000 clerk,

maintenance, and motor vehicle service employees who work for Defendant.  (Compl. ¶

1; Def.'s Mot. at 1; Pl.'s Resp. at 1.)  The relationship between Plaintiff-represented employees and Defendant is governed by a collective bargaining agreement ("National Agreement") and a memorandum of understanding ("Local Memorandum").  (Def.'s Mot. at 1; Pl.'s Resp. at 2.)  Article 7.2.A of the National Agreement states that "normally" work in different crafts cannot be combined into one job.  (Def.'s Ex. 1, at 20.)  This provision also provides criteria for when such combining of crafts would be allowed. (*Id.*)

In 2007, a dispute arose between Plaintiff and Defendant regarding the use of letter carriers to perform the work of clerks at the Postal Service's Brightmoor Station ("Brightmoor Station").  (*Id.*)  Plaintiff filed a class action grievance to the arbitration panel, and on February 1, 2008 Arbitrator Joseph Cannavo sustained the grievance against Defendant.  (Def.'s Ex. 1, at 1.)  Cannavo found that Defendant violated the National Agreement when it used Carrier Craft employees to perform Clerk Craft work on a regular and continuous basis and especially after the Clerk Craft employees were reassigned or excessed.  (*Id.*)  Specifically, "From the record, the Arbitrator finds that the Management at the Brightmoor Station crossed crafts and allowed full and part time Letter Carriers and Casual Carriers to perform Clerk Craft work on a regular and daily basis."  (*Id.* at 21.)

Arbitrator Cannavo instructed the parties to try to agree on a monetary remedy and ordered that Defendant "cease and desist from using Carrier Craft employees on a daily basis as heretofore used."  (*Id.* at 24-25.)  He relied partially on Defendant's inability to satisfy its burden of proof, Defendant's failure to provide information and documentation to Plaintiff in a timely and complete manner, and Defendant's

disingenuous arguments.  (*Id.* at 21-23.)  Arbitrator Cannavo agreed with the Union that the criteria provided in Article 7.2.A that allows combining of jobs "does not exist in the instant case."  (*Id.* at 20.)

On August 28, 2008, pursuant to the Cannavo Award, Plaintiff and Defendant signed an agreement for remedy ("August Agreement"), where Defendant agreed to give monetary relief to the six clerks at Brightmoor and monitor the Brightmoor Station to ensure compliance with the cease and desist order.  (Def.'s Ex. 2.)  In the agreement, "the parties agree that the Arbitrator retains jurisdiction over the implementation of the remedy for the duration of the period."  (*Id.*)

In November 2008, Defendant notified 200 clerks who worked at 22 different facilities in the Detroit area that they were to be reassigned.  (Compl. ¶ 5; Def.'s Mot. at 2.)  There are letter carriers at these facilities performing clerk work in a limited or light-duty capacity.  (Compl. ¶ 7.)  Defendant did not return the light and limited-duty Letter Carriers to their own Craft before the involuntary reassigning the Clerk Craft employees and did not give advance notice to Plaintiff of the involuntary reassignments.  (Compl. ¶ 8; Pl. Resp. at 4.)  Plaintiff protested in a class action grievance that was set to be arbitrated June 3, 2009.  (Def.'s Mot. at 2.)

In December 2008, Defendant notified another 150 Plaintiff-represented clerks at the Postal Service's George W. Young Station in Detroit that they would be involuntarily reassigned.  (Def.'s Mot. at 2; Pl.'s Resp. at 4.)  Plaintiff asserts that this was in violation of the National Agreement and Local Memorandum for insufficient notice to Plaintiff and lack of justification that these clerks are "excess to the needs" of their section.  (Compl. ¶ 11.)  Plaintiff filed a second grievance on December 28, 2008 that was set to be

arbitrated on June 9, 2009.  (Def.'s Mot. at 2.)

At the time of the notice of reassignments, Plaintiff alleges the following: (1) there were instances of unsorted mail that sometimes sat for a week or more, and in some cases that mail has been destroyed; (2) the contractual rights of the Union and its representatives will be impaired while class action grievances are processed to arbitration; and, (3) affected clerks will suffer major disruptions in their personal lives caused by the involuntary reassignments.  (Compl. at ¶ 22.)

On March 6, 2009, Plaintiff filed a complaint in the United States District Court for the Eastern District of Michigan to enforce the Cannavo Award and prevent Defendant from excessing and/or involuntary reassigning the 200 clerks notified in November without first returning limited or light-duty letter carriers to their own craft.  Plaintiff also seeks a preliminary injunction that would stay the reassignments of both the 200 clerks at the 22 different facilities and the 150 clerks at the George W. Young Station, pending arbitration.  (Def.'s Mot. at 2; Pl.'s Resp. at 5.)

## II.   Motion to Dismiss Standard

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate when the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff.  *DirectTV*, *Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).  The Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." *Williams v. City of Detroit*, No. 07-14858, 2009 U.S.

Dist. LEXIS 11725, at *3-4 (E.D. Mich. Feb. 17, 2009).  In reviewing a motion to dismiss, the court may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims.  *Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008).

**III.   Analysis**

   **A.   Enforcement of Arbitration Award**

   Since the United Steelworkers Trilogy,[1] the United States has maintained a policy of favoring peaceful resolution of labor disputes through voluntary arbitration.  *Aluminum Workers v. Consol. Aluminum Corp.*, 696 F.2d 437, 441 (6th Cir. 1982).  Courts must "exercise the utmost restraint to avoid intruding on the bargained-for method of dispute resolution when enforcement of an arbitration award or settlement agreement is sought."  *United Mine Workers*, *Dist. 5 v. Consol. Coal Co.*, 666 F.2d 806, 811 (3d Cir. 1981).

   In assessing whether to enforce an arbitration award, the court must "ensure that the prior arbitration award is not sidestepped and the process of arbitration thereby rendered futile, while simultaneously guarding against actually adjudicating the merits of a grievance."  *Oil*, *Chem. and Atomic Workers Int'l v. Ethyl Corp.*, 644 F.2d 1044, 1050 (5th Cir. 1981).  To accomplish this threading of the needle, courts established criteria to assess when an arbitration award should be prospectively enforced.[2]

---

[1]  *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960).

[2]  There is currently a split among the circuits as to the proper standard to apply.  The First Circuit requires that only where an arbitration award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to the current dispute, will a court enforce the award.  *Derwin v. Gen. Dynamics Corp.*, 719 F.2d 484, 491 (1st Cir. 1983).  The Third Circuit requires that a court must be able to say "with positive assurance" that the award or settlement was

The Fifth Circuit has determined:

> the test that best accommodates the interests of the Union and management is whether or not the current conduct is arguably permissible under the relevant provision [of the] collective bargaining agreement. . . .  If the evidence indicates that a defendant has an arguable position in claiming that the current action does not violate the article in question that the current conduct is materially different from the previously condemned conduct then the defendant is not clearly sidestepping the prior arbitration award.  In such a case, the dispute should be deferred to an arbitrator.

*Ethyl Corp.*, 644 F.2d at 1051.  In espousing this test, the Fifth Circuit acknowledged that in order to protect the arbitral process, conduct that differs in form or has merely superficial differences cannot serve as an excuse for requiring new arbitration proceedings.  *Id.*  However, actions that differ materially from the previously condemned conduct cannot be considered "like violations" of the previous award.  *Id.*

This test places the initial burden on the plaintiff, who must establish that the current conduct inarguably falls within the prohibition that was the subject of the previous arbitration award.  *Id.* at 1051-52.  Where the factual similarities are not "inarguable," the court should leave the question of whether the current conduct actually violates the collective bargaining agreement to the arbitrator.  *Id.* at 1051.  The *Ethyl Corp.* court required "material factual identity" between the facts that gave rise to the arbitration award and those that are the subject of the subsequent grievance, which it defined as "no difference between the current facts and those giving rise to the prior arbitration award which, when analyzed in light of the mandates of the collective

---

intended to cover the current dispute.  *Consol. Coal*, 666 F.2d at 811.  The Seventh Circuit has not laid out a general test, but explained: "We do not believe it is necessary for us to protect the arbitral process from repetitive grievances. . . . the arbitrator can consider the fact that the dispute was previously arbitrated and decide for himself if he believes that declaratory or injunctive relief is warranted by the facts of the case."  *United Mine Workers v. Inland Steel Coal Co.*, 876 F.2d 1288, 1296 (7th Cir. 1989).

bargaining agreement, would justify an arbitrator's reaching a different conclusion." *Id.*
at 1055.

The *Ethyl Corp.* court further observed that if the plaintiff fails to meet his burden
and the complaint is dismissed, the plaintiff may seek further relief through arbitration.

> [I]f the arbitrator decides that this violation of the bargaining agreement is, in
> fact, also a violation of the prior arbitration award, and/or that there is a
> possibility that the company will repeat the violation, the arbitrator should be
> able to shape an appropriate remedy aimed at preventing and repairing the
> damage caused by the defendant's recidivism.

*Id.* at 1053.  The Sixth Circuit, in *United Paperworkers Int'l Union Local 1206 v.
Georgia Pac. Corp.*, 798 F.2d 172 (6th Cir. 1986), adopted the Fifth Circuit's test laid
out in *Ethyl Corp.*  Unlike *Ethyl Corp.*, however, where the prior arbitration award
explicitly forbade future "like violations," the court in *Georgia Pacific* found that
"[w]here there are intervening changes in facts which are arguably significant and
there is no language in the prior award directing prospective application, the issue
of whether the arbitrator's award should be prospectively applied is appropriately
one for the arbitrator to decide." *Id.* at 173.  *Georgia Pacific*, then, distinguished
itself from *Ethyl Corp.* because the prior arbitration award it sought to enforce did not
contain language that indicated it was meant to have a prospective effect.

Courts have "carefully scrutinized suits to 'enforce' past awards where the
facts suggest that the nominal enforcement proceeding is, in truth, an attempt to
extend the award to a new previously unresolved dispute." *Derwin*, 719 F.2d at 491.
And in recognition of its limited role to interfere in the arbitration process, "courts
have often declined to rule that an arbitral award is binding in a later, factually similar
context, reasoning that the precedential effect to be accorded a past award is a

matter for the arbitrator." *Id.* When dealing with an arbitration award that is ambiguous or susceptible to more than one interpretation, courts usually remand to the original arbitrator for clarification. *Green v. Ameritech Corp.*, 200 F.3d 967, 977 (6th Cir. 2000); *Derwin*, 719 F.2d at 490 ("disputes involving the meaning and application of prior arbitral labor awards are themselves the proper subject for arbitration").

In this case, the parties disagree on whether the Cannavo Award was meant to apply prospectively. The Union argues that the Cannavo Award is meant to be applied prospectively because it specifically contained a cease and desist order. The Postal Service, however, contends that there is no language in the Cannavo Award that indicates it should be prospectively applied. To support this argument, the Postal Service relies on the Sixth Circuit's decision in *Georgia Pacific* and the Seventh Circuit's decision in *Inland Steel*, holding that arbitration awards should not be prospectively enforced where there is no language in the award indicating prospective enforcement was intended. However, the unions in both those cases were seeking enforcement of arbitration awards that did not contain cease and desist orders. In fact, in *Inland Steel*, the union requested a cease and desist order during arbitration, and the arbitrator did not grant it. *Inland Steel*, 876 F.2d 1288 at 1291.

The Cannavo Award, however, does contain a cease and desist order. This cease and desist order indicates that the Cannavo Award was intended to have a prospective effect. *Massachusetts Nurses Ass'n v. N. Adams Reg'l Hosp.*, 396 F. Supp. 2d 30, 33-34 (D. Mass. 2005), *aff'd* 467 F.3d 27 (1st Cir. 2006) ("The court

will assume that the subject award was 'clearly intended to have a prospective effect.' That is the very nature of a 'cease and desist' order").[3] Other courts have also determined that cease and desist orders qualify as prospective relief. *See*, *e.g.* *United States v. Miami Univ.*, 294 F.3d 797, 809-10 (6th Cir. 2002) (observing that the ability to issue a cease and desist order was indicative of the lack of intent to limit prospective relief); *Puerto Rico Mar. Shipping Auth. v. Fed. Mar. Comm'n*, 75 F.3d 63, 65 (1st Cir. 1996) (characterizing cease and desist orders as prospective relief); *AT&T v. FCC*, 978 F.2d 727, 732-33 (D.C. Cir. 1992) *superseded by statute on unrelated grounds* ("A cease and desist order, to be sure, can be thought to provide prospective relief"); *Brock v. Writers Guild of America*, *W.*, *Inc.*, 762 F.2d 1349, 1358 (9th Cir. 1985) (limiting the remedy to a prospective order directing the employer to cease and desist); *The Fair v. FTC*, 272 F.2d 609, 613 (7th Cir. 1960) (finding that a violation constituted grounds for cease and desist order prospective in effect).

This Court finds that the cease and desist order in the Cannavo Award is sufficient to establish that the award was intended to have a prospective effect. This is further evidenced by the terms of the August Agreement, which provide for the Union to monitor the Brightmoor Station for one year to ensure that there are no further violations. Having found that the Cannavo Award contained clear indication that it was meant to be applied prospectively, this case cannot be distinguished from *Ethyl Corp.* the way that the Sixth Circuit distinguished *Georgia Pacific*. Following the test set out by *Ethyl Corp.*, then, the Union must establish that the Postal

---

[3] *Massachusetts Nurses* was cited several times in Defendant's Motion to Dismiss despite their argument that the Cannavo Award contained no language indicating the award should have a prospective effect.

Service does not have an arguable position in claiming that the current action does not violate the Article 7.2.A of the National Agreement and that there is no difference between the current facts and those giving rise to the Cannavo Award which would justify an arbitrator reaching a different conclusion.

Defendant's motion argues that dismissal is appropriate because the Cannavo Award does not apply beyond the Brightmoor Station.  The core dispute between the Postal Service and the Union is not about the prospective application of the Cannavo Award at the Brightmoor Station.  Rather, the Union is alleging that the Postal Service is in violation of the National Agreement at 22 other facilities in and around the Detroit area.  The Union thus asserts that the Cannavo Award applies to these additional facilities because the broad language ordering that Defendant "cease and desist from using Carrier Craft employees on a daily basis as heretofore used" was meant to apply generally to all postal facilities.

The validity and enforceability of the Cannavo Award as it applies to the Brightmoor Station is not in question.  There is nothing in the pleadings to suggest that Defendant is seeking to vacate or challenge this award, and there is no allegation that the Postal Service has not fully complied with the August Agreement in response to that award.  The issue is whether the Cannavo Award was meant to apply prospectively *to other facilities*, such that the current dispute is governed by that award or whether it was meant to apply only to the Brightmoor Station and the current dispute should be the subject of new arbitration.

Plaintiff argues that the provision of the National Agreement applied by Arbitrator Cannavo is national in scope, and the cease and desist order contained

no reference to the Brightmoor Station.  Defendant, however, argues that this case is similar to *Massachusetts Nurses*, where the Massachusetts District Court declined to enforce an arbitration award in a subsequent dispute that involved other floors and departments of a hospital than the prior arbitration, even though the prior arbitration ordered the defendant to cease and desist from violating a generally applicable provision in the collective bargaining agreement.  In *Massachusetts*, the court found that the prior arbitration award targeted specific grievances with respect to the particular unit of the hospital only and dismissed the complaint alleging grievances in areas outside the original dispute.  *Massachusetts Nurses*, 396 F. Supp. 2d at 34.

Both parties in this case rely on the language of the Cannavo Award to support their positions on whether the award is meant to be applied generally or only to the Brightmoor Station.  Because the Cannavo Award was specifically referred to and relied on in the complaint, as well as attached to Defendant's Motion to Dismiss, the court may properly consider the award without converting this into a motion for summary judgment.  *Nixon*, 543 F.3d at 357 n.2.

In assessing the scope of the Cannavo Award and whether it is enforceable beyond the Brightmoor Station, the determining factor is the language of the award itself.  The Preliminary Statement of the Cannavo Award makes no mention of the Brightmoor Station.  (Def.'s Ex. 1, Award at 2-3.)  It does not make any reference to any particular station or facility when it states, "The grievance requests as a remedy that all bid clerks be compensated equally for all hours worked by non-clerical employees in the clerk craft; and that employees be made whole in every

way; and that Management be ordered to cease and desist this violation." (Award at 2.)

This general language, however, is not carried over when the Cannavo Award restates the requested remedy in the Position of the Union section. There, it states, "The Union's Advocate requests as a remedy that all Clerk Craft employees at the Brightmoor Station be compensated at the appropriate overtime rate for all hours worked by the Carrier Craft employees in the Clerk Craft." (Award at 8.) This Brightmoor-specific remedy is reflected in the August Agreement between the parties where the Postal Service agreed to compensate the six affected clerks at the Brightmoor Station. The Union contends that the cease and desist order does not specifically mention the Brightmoor Station and as such is not meant to be limited to that facility alone. However, earlier in the Discussion and Opinion section of the Cannavo Award, the Arbitrator indicates his findings by stating, "From the record, the Arbitrator finds that Management at the Brightmoor Station crossed crafts and allowed . . . Carriers to perform Clerk Craft work on a regular and daily basis. This finding is based on the following . . ." (Award at 20-21.) Arbitrator Cannavo goes on to list 18 facts and findings that led to the award. At the end of the list, the Cannavo Award describes further the violations at the Brightmoor Station and in the concluding paragraph states, "On the basis of the foregoing, the grievance is sustained." (Award at 24.) All of the facts and findings Arbitrator Cannavo relied on in making his determination were specific to the Brightmoor Station. In addition, the caption on the front page of the Cannavo Award indicates that this grievance is in reference to a particular post office; the Brightmoor Station.

(Award at 1.)

The Cannavo Award does state that the Union's Advocate has made allegations that clerk craft employees are being improperly excessed at other facilities locally and nationally. (Award at 7.) However, the facts, testimony, and findings all related specifically to the Brightmoor Station. Furthermore, the agreed-to award only allowed for compensation to Brightmoor clerks and the continued monitoring of the Brightmoor Station. As such, these few sentences acknowledging that the Union has alleged a larger problem between the Postal Service and the Clerk Craft employees is not enough to sustain the Union's burden in establishing that the Cannavo Award was inarguably intended to apply beyond the Brightmoor Station to the current grievance at 22 other facilities.

The practice of crossing crafts is generally a violation of Article 7.2.A of the National Agreement, apart from the exceptions provided in the same provision. The Union's position is accurate in that Arbitrator Cannavo applied Article 7.2.A of the National Agreement, which is national in scope. However, Arbitrator Cannavo specifically stated that the criteria that would permit the combining of jobs "does not exist *in the instant case.*" The Cannavo Award does not purport to establish that this criteria does not exist in any facility or could not exist the Brightmoor Station. Rather it finds that the criteria does not exist at the Brightmoor Station in that specific case. Although Arbitrator Cannavo did not find the Postal Service's actions fell into one of the exceptions at the Brightmoor Station; that is not to say that the Postal Service's actions cannot arguably fall into one of those exceptions now.

The Cannavo Award appears to cover only the Brightmoor Station, and as articulated by the Fifth Circuit, "the Court should not, under the guise of enforcement, broaden the scope of the award by deciding that issue itself." *Oil, Chem. and Atomic Workers Int'l v. Rohm & Haas*, *Texas Inc.*, 677 F.2d 492, 494 (5th Cir. 1982).

The Union has not established that the Postal Service's conduct at these 22 facilities was intended to be covered by the Cannavo Award.  In the current grievances, there may indeed be differences that would justify an arbitrator reaching a different conclusion than that in the Cannavo Award, which fails to meet the criteria of enforcement established in *Ethyl Corp*.  The prior award was specific to the Brightmoor Station and affected six clerks at one station.  The current grievances involve 22 different facilities and affect over 350 employees.  These can be considered changes in fact that are at least arguably significant, which requires this Court to dismiss the complaint so the parties can proceed to arbitration.

Although other circuits have different standards for prospective enforcement of arbitration awards, the results of this case would likely be the same under any of those standards.[4]  It may very well be that the Union is correct in its assertion that the grievance will be sustained in another arbitration proceeding.  However, it is ultimately up to the arbitrator to decide whether the facts of this case are similar enough to the facts of the previous arbitration to warrant expanding the Cannavo Award to other facilities.  Contrary to the Union's claim, this case will not produce a modern-day Sisyphus, because the arbitrator can give an adequate remedy if he

---

[4]  *See Derwin*, 719 F.2d at 491; *Consol. Coal*, 666 F.2d at 811.

ultimately determines Defendant's alleged violations should be governed by the Cannavo Award.

The Union does not allege that the Postal Service is in violation of the Cannavo Award or the August Agreement at the Brightmoor Station.  Instead, the Union is asking the court to enforce the Cannavo Award at 22 other facilities in the Detroit area that were not the subject of the original arbitration.  This Court declines to do that.  The Union has not met its burden in establishing that the Cannavo Award was intended to govern this dispute.  The issue as to whether the prior arbitration was intended to cover the present grievances is a matter to be decided by the arbitrator and not the courts.

### B.    Injunctive Relief

The Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq.* severely limits a federal court's ability to issue injunctions related to labor disputes.  However, the United States Supreme Court has recognized an exception in *Boys Markets*, *Inc. v. Retail Clerks Union*, 398 U.S. 235 (1970) (allowing an injunction against a union strike in violation of a no-strike clause).  In *Aluminum Workers*, the Sixth Circuit extended the *Boys Market* exception to cover employer behavior that evades a duty to arbitrate or otherwise undermines the integrity of the arbitral process, such that the arbitrator would otherwise be powerless to grant effective relief.  *Aluminum Workers*, 696 F.2d at 441-42.  A court should not intrude in labor disputes that are arbitrable unless an injunction is necessary to protect the arbitration process itself.  *Id.* at 442.

There are several requirements for a court to issue an injunction in a labor dispute.  First, the dispute must be arbitrable.  *Boys Markets*, 398 U.S. at 254.  In

addition, the court must consider whether the injunction would be warranted under traditional principles of equity: (1) whether breaches are occurring and will continue; (2) whether the plaintiff will suffer irreparable harm; and (3) balancing of hardships between plaintiff and defendant.[5]  *Id.*

### 1.    Arbitrability

The Court must find, first, that the underlying dispute is arbitrable.  In this case, both parties have agreed that the issue – involuntary reassignment of clerks – is matter covered in the National Agreement and is thus arbitrable.

### 2.    Ongoing Nature of Breach

The Court must also find that there are ongoing breaches and that these breaches will continue.  The Postal Service denies that there are any current breaches, while the Union claims that the Postal Service is in breach at 22 different facilities.  In viewing the Complaint in the light most favorable to the Union, the breaches appear to be ongoing.

### 3.    Irreparable Harm

To state a claim for injunctive relief, Plaintiff must show that the failure to issue an injunction is likely to result in irreparable harm to it.  *Miami Univ.*, 294 F.3d at 816.  Irreparable harm is "injury so great that an arbitrator's award, if forthcoming, would be inadequate to fully recompense the injured party.  It renders the award an 'empty victory'."  *Aluminum Workers*, 696 F.2d at 443.

_____

[5]  Another principle often required is that the party seeking an injunction must demonstrate a likelihood of prevailing on the merits. *Aluminum Workers*, 696 F.2d at 442 n.2. Adopting the Ninth Circuit's interpretation of this requirement in a labor dispute, the Sixth Circuit has determined that the party seeking an injunction need only establish that the position he takes in arbitration is sufficiently sound to prevent arbitration from being a futile endeavor.  *Id* at 442.

The Sixth Circuit has ruled that financial injury to employees due to lost overtime does not constitute irreparable harm. *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union*, 471 F.2d 872, 877 (6th Cir. 1972). Even loss of employment is not irreparable harm where, if the arbitration award so orders, the employer is able to reinstate the affected employees and compensate them for lost wages. *Aluminum Workers*, 696 F.2d at 443 ("Absent some indication of action on the part of the employer which could jeopardize its ability to reinstate affected employees or to pay them wages for the period of unemployment, we hold that loss of employment . . . is not irreparable harm"). In addition, the Sixth Circuit has held that repossessions, foreclosures, and injury to credit ratings did not constitute irreparable harm. *Id. See e.g. United Steelworkers of America Local 13702 v. Mikocem Corp. Cemeteries*, No. 05-73184, 2005 WL 2090884, at *4 (E.D. Mich. Aug. 30, 2005) (finding that lost income, damaged credit, loss of homes, and stigmatization or humiliation by the elimination of a bargaining unit are insufficient to establish irreparable harm in the Sixth Circuit); *Teamsters Local Union 299 v. U.S. Trucking Co. Holdings Inc.*, 87 F. Supp. 2d 726 (E.D. Mich. 2000) (taking lower paying jobs, suffering financial hardships, or being forced to have other family members seek additional employment to cover lost wages are do not establish irreparable harm).

Any injury to the Union itself, where it is not in danger of losing its status as bargaining representative or of suffering a reduction of membership, is an issue for arbitration. *Detroit Newspaper*, 471 F.2d at 877; *Int'l. Union*, *UAW v. LaSalle Mach.*

*Tool*, *Inc.*, 696 F.2d 452, 458 (6th Cir. 1982) (finding loss of confidence in the members of a union is no basis for a finding of irreparable harm).

Plaintiff contends that irreparable injury will occur absent an injunction because: (1) there will be a delay in the delivery of time-sensitive mail; (2) the involuntary reassignments will create huge disruptions to personal lives of the affected employees; and, (3) the Postal Service's actions threaten to undermine the Union's role as representative of clerks.

The law clearly establishes that the irreparable harm component addresses irreparable harm *to the Plaintiff*. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 532 (6th Cir. 2004) (observing that it is the "possibility of irreparable harm *to the plaintiff* in the absence of an injunction") (emphasis added); *Boys Markets*, 398 U.S. at 254. Here, Plaintiff contends that the affected employees are members of the public and might be just as affected by the delay of time-sensitive mail as anyone else. However, even if the Court concedes that the failure to issue an injunction might result in some time-sensitive mail being lost and that lost time-sensitive mail might belong to one of the Union's representatives; this is far from establishing that irreparable harm is *likely* to result. This argument cannot constitute the basis for irreparable harm.

The Union's second assertion of irreparable harm is that the Postal Service's actions will create huge disruptions to the personal lives of the affected employees that will result in the employees having to re-arrange family obligations and schedules that could have prohibitive costs to the employees. In addition, the Union asserts that the affected employees could be forced into more physically demanding

work that they may be unable or have trouble performing.  The Postal Service does not deny that the involuntary reassignments will disrupt the lives of the affected employees.  However, they contend that the disruptions alleged do not rise to the level of irreparable harm.  There is no assertion in the Complaint or Plaintiff's Response to Defendant's Motion to Dismiss that the Postal Service will not be able to reinstate the affected employees and award back pay if ordered to do so by an arbitration award.  In fact, the Union writes, "The re-assignments being planned are massive in scale, and are to be achieved through a complex bidding and involuntary placement process, *that will ultimately have to be undone*."  (Pl. Resp. at 15-16.) (emphasis added)   In the August Agreement, the Postal Service agreed to compensate the affected employees at the Brightmoor Station.  There is nothing in the current dispute to suggest that the Postal Service would be unable to implement such an agreement in the event of an arbitrator's decision for the Union.[6]  Because an arbitrator can order an effective remedy, the harms described by Plaintiff do not rise to the level needed to establish irreparable harm, and the integrity of the arbitration process is not being threatened.

---

[6]  To support the request for an injunction, Plaintiff cites *American Postal Workers Union - Detroit District Area Local, AFL-CIO v. United States Postal Service*, 703 F. Supp. 621 (E.D. Mich. 1987) (where the district court granted preliminary injunction without explanation as to what constituted the irreparable injury to employees).  However, without any reasoning or findings on the facts of that case, this Court cannot apply it to the current dispute other than as support for the notion that injunctions are sometimes appropriate.  Plaintiff also cites this Court's ruling in *Teamsters*, 87 F. Supp. 2d 726. *Teamsters*, however, is squarely in line with *Aluminum Workers* and the Court's reasoning here.  In *Teamsters*, this court denied to issue an injunction to continue operating the trucking facility but granted an injunction to prevent the employer from further liquidating its assets.  The injunction enjoining the liquidation of assets was issued in order to protect the integrity of the arbitration process itself and the possibility of the affected employees collecting on any arbitration award that might be issued. Such protection is not necessary here.

Plaintiff's final assertion of irreparable harm is that the Postal Service's actions threaten to undermine Union's role as representative of clerks.  The Union does not allege that it is in danger of losing its status as bargaining representative or of suffering a reduction in membership, and as such, it does not meet the irreparable harm standard.  Any harm that it may suffer due to the Postal Service undermining its bargaining power or loss of confidence in members is an issue for arbitration.

The Union did not demonstrate irreparable harm, and as such, an injunction is not appropriate.

### 4.    Balancing of Hardships

Only in cases where the party seeking an injunction can demonstrate irreparable harm does a court need to go on to balance that harm against the harm to the other party.  *Aluminum Workers*, 696 F.2d at 444.  Because the Union here has not demonstrated that irreparable harm to the Union or its representatives is likely to result, it is not necessary to balance the hardships.

## IV.    Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  August 4, 2009


I hereby certify that a copy of the foregoing document was served upon counsel of record on August 4, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager